IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

THOMAS W. LOVEGROVE,

Plaintiff,

v.  Civil Action No. 2:16cv418

BROCK & SCOTT, PLLC,

Defendant.

## OPINION & ORDER

This matter is before the Court on Defendant Brock & Scott, PLLC's ("Defendant") three (3) pending motions: a Motion to Dismiss the Class Action Complaint, Doc. 13, a Motion to Strike the Complaint's demand for punitive damages, Doc. 11, and a Motion to Stay Discovery, Doc. 22, pending the resolution of the Motion to Dismiss. Plaintiff Thomas W. Lovegrove ("Plaintiff") opposes each. Docs. 16, 17, 24. For the reasons set forth herein, the Court **GRANTS** the Motion to Dismiss, **DENIES** the Motion to Strike as **MOOT**, and **DENIES** the Motion to Stay Discovery as **MOOT**.

### I. BACKGROUND

#### A. Facts

Plaintiff, a Virginia citizen, is the owner of the property at 70 Homeplace Circle, Moneta, Virginia. Compl., Ex. B. Defendant is a law firm organized under the laws of North Carolina and maintains an office at 484 Viking Drive, Suite 203, Virginia Beach, Virginia. Id. ¶ 4. "The principal purpose of [Defendant]'s business is the collection of debts for its clients, creditors to whom debts are allegedly owed by consumers." Id. ¶ 5. Defendant also owns and operates Trustee Services of Virginia, L.L.C., which performs foreclosures in Virginia. Id. ¶ 22.

1

On May 10, 2016, Defendant sent Plaintiff a referral for foreclosure letter ("Foreclosure Letter"). Id. ¶ 14 & Ex. A. Defendant alleged that Plaintiff owed $1,798,636.56 to Bank of America, N.A for the Moneta property. Id., Ex. A. The letter provided Plaintiff with steps to dispute the debt. Id. Defendant stated that if Plaintiff notified Defendant that he disputed the debt in writing within thirty (30) days of receipt of the letter, Defendant's "office will obtain a verification of the debt or a copy of a judgment against you and mail it to you." Id. At the bottom of each page of the letter, Defendant included this paragraph in bold italicized font:

> ***THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN A CHAPTER 7 BANKRUPTCY, WE ARE AWARE YOU ARE NOT PERSONALLY OBLIGATED FOR THIS DEBT. PLEASE BE ADVISED THAT THIS NOTICE IS REQUIRED FOR FORECLOSURE IN THIS STATE.***

Id. The letter also contained a paragraph stating, "If your personal liability for this debt has been discharged in a bankruptcy proceeding and you have not reaffirmed the debt, this communication is for notice purposes only in connection with the foreclosure of the referenced property, and we are not attempting to collect the debt from you personally." Id.

Plaintiff alleges that he "had a reasonable basis for disputing that he owed the debt" and through counsel sent Defendant letters on May 17, 2016 and May 20, 2016 disputing the validity of the debt and requesting verification of it. Id. ¶¶ 15–16 & Ex. B. Plaintiff wrote that Bank of America transferred or sold the Note to "CIG-RESI HFI 1ST LIEN MORT," and Bank of America notified Equifax, a credit reporting agency, that it no longer held the Note. Id., Ex. B. On June 3, 2016, Defendant replied with a copy of the Foreclosure Letter and a statement that no foreclosure sale was scheduled at that time. Id., Ex. C. On June 21, 2016, Defendant sent Plaintiff a letter stating its understanding that Plaintiff had "an interest in the [Moneta] property,"

enclosing copies of a Notice of Trustee's Sale and a Substitution of Trustee, and informing Plaintiff that the property would be sold at public auction on July 5, 2016. Id., Ex. D. Plaintiff alleges that Defendant failed to verify the alleged debt and continued to collect it by scheduling the foreclosure sale. Id. ¶ 19.

On June 27, 2016, Plaintiff filed an action in the Franklin County Circuit Court for an injunction enjoining Trustee Services of Virginia from foreclosing on Plaintiff's property. Id. ¶ 22. On June 30, 2016, a Franklin County Circuit Court judge "orally indicated that he would grant the motion for a temporary injunction." Id. ¶ 25. Plaintiff alleges that at the hearing, Defendant's counsel assured him that the July 5, 2016 foreclosure sale would be canceled. Id. As of the filing of the Complaint in this case, a foreclosure sale was scheduled for July 27, 2016. Id. ¶ 28.

On July 7, 2016, Plaintiff filed the three-count Class Action Complaint. See generally id. The Complaint alleges violation of Sections 1692g(b) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA") (Counts One and Two) and fraud (Count Three). Id. Plaintiff included the description of three (3) classes in the Complaint: (1) the "Main Class" eligible for relief under Count Three consisting of all persons nationwide who received foreclosure letters with identical debt dispute language from Defendant, attempted to dispute the debt, but did not receive mailed verification of the debt from Defendant; (2) the "First Subclass" eligible for relief under Count Two consisting of members of the Main Class to whom Defendant sent the same Foreclosure Letter in the year preceding the filing of the Complaint; and (3) the "Second Subclass" eligible for relief under Count One consisting of members of the Main Class to whom Defendant sent the same Foreclosure Letter in the year preceding the filing of the Complaint and against whom Defendant pursued collection prior to verifying the debt. Id. ¶ 31.

Plaintiff alleges upon his "experience, information, and belief" that Defendant "regularly and systematically fails to provide meaningful verification of debts required by the FDCPA . . . even after Brock & Scott has received written request[s] from consumers." Id. ¶ 12. Plaintiff also alleges that Defendant regularly continues to collect debts despite receiving debtors' timely written dispute notices. Id. ¶ 13. Plaintiff requests judgment in favor of the class members, an injunction permanently enjoining Defendant from violating the FDCPA, actual damages, statutory damages of $1,000 per class member, reasonable attorney fees and costs, and $350,000 in punitive damages. Id. ¶¶ 40, 43, 51.

### B. Procedural History

On July 7, 2016, Plaintiff filed the three-count Class Action Complaint. See generally id. On July 22, 2016, Defendant filed a Motion for Extension of Time to File a Responsive Pleading, Doc. 5, which the Court GRANTED on July 25, 2016, Doc. 6. On August 9, 2016, Defendant filed a Motion for Extension of Time to File a Reply, Doc. 8, which the Court GRANTED on August 10, 2016, Doc. 9. The Court's Order allowed Plaintiff to respond to Defendant's responsive pleadings by September 16, 2016. Id. On August 12, 2016, Defendant filed the Motion to Strike the Complaint's demand for punitive damages, Doc. 11, and the Motion to Dismiss, Doc. 13. On September 16, 2016, Plaintiff filed his opposition to the Motion to Strike, Doc. 16, and his opposition to the Motion to Dismiss, Doc. 17. On September 22, 2016, Defendant filed its replies. Docs. 18, 19. On December 6, 2016, Defendant filed the Motion to Stay Discovery pending the resolution of the Motion to Dismiss. Doc. 22. On December 20, 2016, Plaintiff opposed the Motion to Stay Discovery. Doc. 24. Defendant replied on December 23, 2016. Doc. 25. A final pretrial conference is scheduled for April 19, 2017, and a jury trial is scheduled for May 9, 2017. Doc. 21.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations and construe them in the plaintiff's favor, Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999), the same is not true for legal conclusions, Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)); see Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004). The court may take judicial notice of public court records and parties' admissions even if they are attached only to the motion to dismiss. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606–07 (4th Cir. 2015); O'Neal v. Donahoe, 802 F. Supp. 2d 709, 715 n.7 (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989), in which the court took judicial notice of "prior judicial pleadings involving the same person, property, and issues").

B.  **Fair Debt Collection Practices Act (FDCPA)**

The FDCPA exists to curtail "abusive conduct" by debt collectors in the course of their communications with indebted consumers. Russel v. Absolute Collection Servs., Inc., 763 F.3d 385, 388–89 (4th Cir. 2014). A strict liability statute, United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 139 (4th Cir. 1996), the FDCPA applies only to the collection of a debt, Lovegrove v. Ocwen Home Loans Servicing, L.L.C., No. 15-2158, 2016 WL 7378098, at *2 (4th Cir. Dec. 20, 2016). "To prevail on an FDCPA claim, plaintiffs must sufficiently allege that (1) they were the object of collection activity arising from a consumer debt; (2) defendant is a debt collector as defined by the FDCPA; and (3) defendant engaged in an act or omission prohibited by the FDCPA." Blagogee v. Equity Trs., LLC, et al., No. 1:10-cv-13, 2010 WL 2933963, at *5 (E.D. Va. July 26, 2010).

A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Fourth Circuit held in Wilson v. Draper & Goldberg, P.L.L.C. that a debt remains a debt even during foreclosure proceedings. 443 F.3d 373, 376 (4th Cir. 2006) ("We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods."). Furthermore, a debt collector's foreclosing, sending an eviction notice, or requiring payment to "reinstate" an account can indicate that a debt remains outstanding during foreclosure. Id.

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another." § 1692a(6). "Although there is no bright-line rule, 'determining whether a communication constitutes an attempt to collect a debt is a "commonsense inquiry" that evaluates the "nature of the parties' relationship," the "objective purpose and context of the communication," and whether the communication includes a demand for payment.'" Lovegrove v. Ocwen, No. 15-2158, 2016 WL 7378098, at *2 (citing In re Dubois, 834 F.3d 522, 527 (4th Cir. 2016)).

C. **Fraud**

Fraud is subject to a heightened pleading standar:; "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 454 (E.D. Va. 2009). Under Virginia law, a plaintiff alleging actual fraud must state "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." State Farm Mut. Auto. Ins. v. Remley, 270 Va. 209, 218 (2005) (quoting Prospect Dev. Co. v. Bershader, 258 Va. 75, 85 (1999)); see Hardnett v. M&T Bank, No 3:15cv622, 2016 WL 4581410, at *4 (E.D. Va. 2016). The complaint must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting Wright & Miller, supra, § 1297). In other words, the plaintiff must state the circumstances, or "the 'who, what, when, where, and how' of the alleged fraud." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 384 (5th Cir. 2003)).

"[F]raud must relate to a present or a pre-existing fact, and cannot ordinarily be

7

predicated on unfulfilled promises or statements as to future events." Soble v. Herman, 175 Va. 489, 500 (1940). "[A] mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." Id. A fraud claim involving a future action, however, will survive if the plaintiff has alleged that the "promisor ma[de] a promise with the present intention of never fulfilling it." Eonomoto, 624 F. Supp. at 455. Because "the promisor's intention—his state of mind—is a matter of fact[,] [w]hen he makes the promise, intending not to perform, his promise is a misrepresentation of present fact, and if made to induce the promise to act to his detriment, is actionable as an actual fraud." Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 677 (1985).

### III. ANALYSIS

**A. Defendant was a not attempting to collect a "debt" and therefore was not a "debt collector" under the FDCPA.**

Though the Parties dispute Defendant's status as foreclosure trustee not subject to the FDCPA, compare Doc. 14 at 3–5 with Doc. 17 at 3–4, a more central issue determines the survival of Plaintiff's FDCPA claims: Defendant's contacts with Plaintiff were not an attempt to collect a debt under the FDCPA because the debt was undisputedly discharged in Plaintiff's prior bankruptcy proceedings. "The Plaintiff understood that his mortgage debt was discharged, and made affirmative representations as to the same in various courts across the Commonwealth." Doc. 14 at 6 (citing Plaintiff's discharge of the debt in Chapter 7 and Chapter 13 proceedings); see id., Exs. A–C. The Fourth Circuit attributed Plaintiff with this knowledge in a recent opinion involving Plaintiff and another debt collection agency. Lovegrove v. Ocwen, No. 15-2158, 2016

WL 7378098, at *1.[1] In that case, Ocwen Home Loans Servicing sent Plaintiff a letter with this disclaimer in bold italicized font:

> *This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

Id. Plaintiff was presumed to have read Ocwen's debt collection disclaimers with "'a basic level of understanding and willingness to read with care'" and "should have known that Ocwen was not attempting to collect a debt from him" because his debt had been discharged in bankruptcy. Id. at *3 (quoting Nat'l Fin. Servs., Inc., 98 F.3d at 136). The Fourth Circuit affirmed the district court's entry of summary judgment for Ocwen because its several communications to Plainitff were nonthreatening, purely informational, and "generally request[ed] payments" alongside "clear and unequivocal disclaimers to establish that they were not in connection with the collection of a debt under Lovegrove's circumstances." Id. at *3 & n.5.

This case is unsurprisingly analogous to Lovegrove v. Ocwen. Defendant here was likewise not attempting to collect a debt from Plaintiff. First, as alleged in his response to the Motion to Dismiss, Plaintiff was aware that his debt had been discharged in bankruptcy proceedings. Doc. 17 at 17 ("Brock & Scott sent the 'Fair Debt Letter' because it intended to collect the alleged Bank of America mortgage even though it was discharged in bankruptcy."). Plaintiff's substantive response to the Foreclosure Letter notified Defendant that Plaintiff "dispute[d] that he owes a mortgage debt to Bank of America." See Compl., Ex. B. Though the

---

[1] Defendant's Motion to Dismiss alleges that, on these facts, Plaintiff has filed "no less than ten civil lawsuits against Bank of America, the trustee and/or the loan servicer, as well as two bankruptcy cases." Doc. 18 at 1; see Doc. 14, Ex. D.

Complaint does not expressly allege the debt's discharge in bankruptcy,[2] Defendant attached Plaintiff's Chapter 7 and 13 bankruptcy petitions and discharge notice to its Motion to Dismiss. Doc. 14, Exs. A–C. Plaintiff received a public discharge of his debt in his Chapter 7 bankruptcy proceedings, Doc. 14, Ex. B, and affirmed the fact in the public records in his case against Ocwen, Lovegrove v. Ocwen Loan Servicing, LLC, No. 7:14cv329, 2015 WL 5042913, at *1 (W.D. Va. Aug. 26, 2015); id., Compl. ¶ 5 ("The plaintiff obtained a discharge in bankruptcy on March 15, 2011 . . ., which discharged his mortgage debt to Bank of America."). In light of the relevant public records, the Court **TAKES** judicial notice of Plaintiff's understanding that his debt was discharged in bankruptcy. Consequently, both Parties understood that Plaintiff no longer owed a debt.

Second, Defendant was not attempting to collect a debt. Defendant's communications to Plaintiff are fewer and even less related to debt collection than those Ocwen sent. Defendant sent only three (3) communications to Plaintiff: the May 10, 2016 Foreclosure Letter, the June 3, 2016 e-mail response to Plaintiff's counsel, and the June 21, 2016 Notice of Trustee Sale. Compl., Exs. A, C–D. The Foreclosure Letter listed the amount of debt and the creditor, Bank of America, N.A., but contained no payment demand. Id., Ex. A. Defendant's June 3, 2016 e-mail to Plaintiff's counsel included this disclaimer at the bottom: "This firm is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose." Id., Ex. C. However, read in light of Plaintiff's knowledge of his discharged debt, the succinct communication lacking a payment demand and using nonthreatening language cannot be viewed as a debt collection effort. See Lovegrove v. Ocwen, No. 15-2158, 2016 WL 7378098, at *1. Similarly, Defendant's June 21, 2016 response stated, "Our records indicate that you may have

---

[2] When the district court entered summary judgment against Plaintiff in Lovegrove v. Ocwen, Plaintiff had specifically alleged that his debt was discharged in bankruptcy. Lovegrove v. Ocwen Loan Servicing, LLC, No. 7:14cv329, 2015 WL 5042913, at *1 (W.D. Va. Aug. 26, 2015).

an interest in the above referenced property, whether it be as an owner or as a lien or judgment holder." Compl., Ex. D. Defendant could have sent this response to a person like "a lien or judgment holder," who would not owe a debt; thus, the communication was not necessarily in connection with the collection of Plaintiff's debt. Defendant sent Plaintiff no monthly account statements or harassing notifications, but only three (3) plain communications. Id., Exs. A, C–D.

A "commonsense" analysis of Plaintiff's knowledge of his debt discharge and the few direct communications reveals that Plaintiff was not subject to "debt" collection and Defendant was not acting as a "debt collector" under the FDCPA. See Lovegrove v. Ocwen, No. 15-2158, 2016 WL 7378098, at *2–3. Thus, Plaintiff has failed to allege two elements of an FDCPA action, and the Court **GRANTS** the Motion to Dismiss as to Counts One and Two.

**B.     Defendant's alleged misrepresentation was not material.**

Defendant claims that Plaintiff has failed to allege a false representation of present material fact or resulting damage required for fraud. Doc. 14 at 9–10. Defendant claims that its statements that it "would" provide and mail debt verification if Plaintiff disputed the debt were not statements of present fact, but "promises to do a future act," which cannot support a fraud claim. Id.

Plaintiff alleges he "was entitled to rely upon Brock & Scott's statement that it would provide verification" and "relied to [his] detriment upon Brock & Scott's statement." Compl. ¶¶ 47–48. At the time, Defendant allegedly "made such representations in the Fair Debt Letter as a charade, merely to appear to comply with the [FDCPA], but Brock & Scott knew when it made such representation . . . that its business practice was not to provide verification to consumers . . . ." Id. ¶ 46. Plaintiff and the class "were damaged by being subject to such collection action by Brock & Scott when such collection action was prohibited," and Defendant

11

"den[ied] the members of the class the right . . . to be free from collection action by a debt collector until the debt collector provided proof that the debt was actually owed." Id. ¶ 49. Plaintiff's response to the Motion to Dismiss states that Defendant had no intention of verifying the debt and Defendant "lull[ed] [Plaintiff and the class members] into thinking that their disputed debt would be resolved and to not take other action to resolve the dispute." Doc. 17 at 23.

Plaintiff has sufficiently alleged the "who, what, when, where, and how" of actual fraud. See Kellogg, 525 F.3d at 379. Defendant sent the May 10, 2016 Foreclosure Letter to Plaintiff and made a promise to perform in the future but allegedly misrepresented its present intention not to perform. Compl. ¶¶ 14, 46; see Eonomoto, 624 F. Supp. 2d at 455; Colonial Ford, 228 Va. at 677. According to Plaintiff, Defendant's purposeful "charade" consisted of both the promise to mail verification if Plaintiff disputed the debt and Defendant's simultaneous intention to follow its "business practice . . . to not provide verification." Compl. ¶ 46. Plaintiff has also alleged that he and the class members were damaged by being subject to improper collection action and that Defendant gained the appearance of compliance with the FDCPA without intending to comply. Id. ¶¶ 49, 46.

Despite his proper allegation of the circumstances and result of Defendant's statements, however, Plaintiff has failed to allege that Defendant's misrepresentation was of a material fact. State Farm, 270 Va. at 218. If, as analyzed above, Defendant was not subject to the FDCPA under these facts, see Part III.A, Defendant's intent to comply with the FDCPA was immaterial to its dealings with Plaintiff. Even if Defendant misrepresented its intent to provide Plaintiff with debt verification, it was inconsequential because Defendant was not required under the FDCPA to provide such verification. Plaintiff's fraud claim hinges on his FDCPA claims;

because Counts One and Two fail, Count Three must also fail.

Therefore, the Court **GRANTS** the Motion to Dismiss as to Count Three.

### IV. CONCLUSION

Because the Court hereby **GRANTS** the Motion to Dismiss in its entirety, the Court also **DENIES** the Motion to Strike as **MOOT** and **DENIES** the Motion to Stay Discovery as **MOOT**.

The Clerk is **REQUESTED** to deliver electronically a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA

January 17, 2017